STATE of Missouri, Respondent,

v.

Walter BRIDGES, Appellant.

No. 48899.

Supreme Court of Missouri,

Division No. 1.

Oct. 8, 1962.

Samuel Raban, St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., Richard R. Nacy, Jr., Howard L. McFadden, Asst. Attys. Gen., Jefferson City, for respondent.

HOLMAN, Commissioner.

Defendant was charged with having "unlawfully and feloniously become addicted to a narcotic drug, to wit: Heroin." See §§ 195.020 and 195.200 (unless otherwise indicated all statutory references are to RS Mo 1959, V.A.M.S.). He was also charged with two prior felony convictions. See § 556.280. The trial court held a hearing outside the presence of the jury and found that on June 16, 1959, defendant had been convicted in the Circuit Court of the City of St. Louis, Missouri, upon two charges of the felony of carrying a concealed weapon and was sentenced to serve a term of nine months, upon each charge, in the workhouse of the City of St. Louis. At the conclusion of the trial the jury returned a verdict finding defendant guilty of the offense charged. The trial court fixed defendant's punishment at imprisonment in a "State Correctional Institution" for a period of nine years. See §§ 556.280(1) and 195.200. Defendant has appealed from the ensuing judgment and sentence.

Defendant was arrested on October 13, 1960, by Officers Lloyd G. Altemus and Oscar Farmer who were assigned to the narcotics division of the St. Louis Police Department. At the time of his arrest defendant was apparently awaiting his turn to receive treatment at the Washington University Clinic. Officer Altemus testified that after defendant had been arrested they asked to see his arms, and that he rolled up his sleeves and they inspected both of his arms; that such inspection revealed numerous puncture marks on his arms indicating that a needle had been used to inject something into his arms; that a number of such marks appeared to have been made from 48 to 72 hours prior to that time; that there was a lump on the left forearm which defendant stated was the result of a broken hypodermic needle which he had broken while administering a shot of heroin; that defendant was taken to headquarters and booked and was then questioned in the presence of Sergeant Bloss and other officers relative to the marks on

his arm; that he then stated that he had been using heroin for the past four or five years. Defendant also stated that he had last used heroin on October 10 and the next preceding time was on October 8. Officer Farmer was the next witness but his testimony was very similar to that of Officer Altemus and for that reason will not be detailed here.

Dr. William D. Perry testified that he was a physician employed by the police department in administering tests to individuals to determine narcotic addiction; that defendant was brought to his office on October 13, 1960; that he requested that defendant roll up his sleeves and he did so; that there were marks on both of defendant's arms typical of narcotic use intravenously; that upon being interrogated defendant stated that he had been a user of heroin; that defendant was asked to submit to the Nalline test but he refused and the test was not performed. This witness further testified that heroin is a narcotic which formerly was used in the United States for relief of pain, but that because of its addicting properties it has not been prescribed medically since 1925 and has not been legally available for medical use since that year. In response to hypothetical questions Dr. Perry stated that he was of the opinion that defendant, by the use of the drug over a period of years, would develop a physical tolerance to it, as well as a psychological dependence upon the drug; that in his opinion defendant did not need a narcotic drug for any medical reason at the time he saw him.

Harold Bloss, head of the narcotic division of the police department, testified that defendant was brought to headquarters on October 13, 1960, at which time he inspected defendant's arms and, "starting approximately at the inner elbow, clear down to the wrist, and back of the hands, were the same puncture marks that we see often on drug addicts. And there were also some red welts, which is indication of recent use, along with black streaks, which are caused from a dirty needle. Q. Following this

visual observation by yourself, did you question Walter Bridges? A. I did, sir. Q. What, if anything, did he say concerning the marks that you had seen? A. They were caused from him using narcotics since 1956. Q. Did you question him specifically as to what kind of narcotics? A. I did. He told me that he was using heroin."

Defendant offered no evidence. He has not filed a brief in this court so we will consider the assignments in his motion for new trial. In view of the conclusion we have reached we need consider only one of the assignments in defendant's motion. That assignment is that his sentence of nine years' imprisonment in a state correctional institution constitutes cruel, unusual and inhuman punishment and violates the Eighth Amendment to the Constitution of the United States. He contends that he is actually being imprisoned for being afflicted with a disease, i. e., narcotic addition; that in enacting § 202.360, the legislature has recognized that such is a disease by making provision for involuntary confinement of drug addicts in state hospitals for insane persons for treatment until such habit is cured. The effect of defendant's contention is to draw into question the constitutionality of the statutory provision under which he was convicted.

In 1953 § 195.020 was repealed and re-enacted and, as so enacted, reads as follows: "It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this chapter, or to possess any apparatus, device or instrument for the unauthorized use of narcotic drugs." Laws of Missouri 1953, p. 628. That section was again repealed and re-enacted in 1957, and as so enacted, was the same as the 1953 enactment except that the words "shall be" were changed to "is", and at the end thereof was added the provision, "or to be or become addicted to any narcotic drug." Laws of Missouri 1957, p. 682. The punishment for a violation of the provision which proscribed addiction is fixed by § 195.200 at

**650**

"imprisonment in a state correctional institution for a term of not more than twenty years, or by imprisonment in a county jail for a term of not less than six months nor more than one year." We think it is also of interest that § 202.360 makes provision for the involuntary confinement and treatment of drug addicts as follows: "All residents of this state, except those in the condition of senility, or suffering pain from incurable disease, who are or shall become habitual users of any narcotic drug defined in section 195.010, RSMo, to such an extent as to become what is commonly called or known as 'dope fiends' or 'addicts', shall be subject to involuntary confinement in the state hospitals for insane persons, under treatment by the medical staffs of such hospitals, for the cure of such habit, for such period of time as shall be necessary to accomplish such cure. Persons so confined shall be entitled to be released when, and not before their appetite for such drug, or drugs, has been thoroughly eradicated, which cure shall, prima facie, depend upon the opinion of the hospital superintendent where the confinement occurs."

We think the contention of the defendant must be sustained under the authority of the recent decision of the Supreme Court of the United States in Robinson v. State of California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758. In that case the facts were very similar to those in the case at bar and the statute involved made it a criminal offense for a person to "be addicted to the use of narcotics." Violation was made a misdemeanor punishable by imprisonment in the county jail for not less than 90 days nor more than one year.

In holding the California statute unconstitutional the court stated: "It is unlikely that any State at this moment in history would attempt to make it a criminal offense for a person to be mentally ill, or a leper, or to be afflicted with a venereal disease. A State might determine that the general health and welfare required that the victims of these and other human afflictions be dealt with by compulsory treatment, involving quarantine, confinement, or sequestration. But, in the light of contemporary human knowledge, a law which made a criminal offense of such a disease would doubtless be universally thought to be an infliction of cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. See State of Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422. We cannot but consider the statute before us as of the same category. In this Court counsel for the State recognized that narcotic addiction is an illness. Indeed, it is apparently an illness which may be contracted innocently or involuntarily. We hold that a state law which imprisons a person thus afflicted as a criminal, even though he has never touched any narcotic drug within the State or been guilty of any irregular behavior there, inflicts a cruel and unusual punishment in violation of the Fourteenth Amendment. To be sure, imprisonment for ninety days is not, in the abstract, a punishment which is either cruel or unusual. But the question cannot be considered in the abstract. Even one day in prison would be a cruel and unusual punishment for the 'crime' of having a common cold." Robinson v. State of California, 82 S.Ct. l. c. 1420, 1421. Also, at page 1421, it is stated in one of the concurring opinions that "it is 'cruel and unusual' punishment in the sense of the Eighth Amendment to treat as a criminal a person who is a drug addict."

We have had some difficulty in determining the effect of the reference of the court to the fact that there was no requirement of a finding that defendant had used the narcotic drug within the state. However, we have decided that such was not actually a factor in the determination of the question in which we are interested. It would appear that such reference was made in order to make it clear that the court was not condemning a statute which makes the "act" of using a narcotic drug a criminal offense as distinguished from the portion of the statute there (and here) involved

which made the "status" of drug addiction a crime. This distinction is particularly emphasized in the concurring opinion of Mr. Justice Harlan. 82 S.Ct. 1426.

In its brief the State asserts that the Robinson case is not controlling because of the difference in the two statutes. The California statute (West's Ann.Health & Safety Code, § 11721) made it an offense to "be addicted to the use of narcotics." Section 195.020 makes it unlawful "to be or become addicted to any narcotic drug." The State contends that our statute does not merely refer to the "status" of being addicted, but that the words "or become" refers to an act or series of acts whereby addiction is established and that such use must be shown to have occurred in this state.

We cannot agree with the argument of the State. There is little, if any, difference in the provisions of the two statutes. One cannot "be" an addict unless he has theretofore "become" an addict. We therefore must conclude that the legislature intended to make the "status" of addiction an offense. If it had intended to proscribe the "act" of using a narcotic in this state it could and should have so stated in clear and express language.

The State, in its brief, has made various other suggestions as to why the Robinson case should not be applied in determining the issue before us. We do not consider it necessary to discuss those attempts to develop distinctions between our statute and the situation in Robinson which we consider to be unsubstantial and which depend upon various constructions which this court might place upon the instant statutory provision. As we understand the Robinson case, the court therein held that a state law which defines as a crime the "status" of drug addiction, and provides imprisonment as a punishment, inflicts cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States. The provision in § 195.020, "or to be or become addicted to any narcotic drug," under any reasonable construction, must be said to define the "status" of drug addiction as a crime, and § 195.200 provides a punishment of not less than six months' imprisonment in the county jail, nor more than twenty years' imprisonment in a state correctional institution, thus classifying the offense as a felony. We accordingly hold, upon the authority of Robinson v. State of California, supra, that the portion of § 195.020 heretofore quoted in this paragraph is unconstitutional and void.

There is respectable authority for the view that "contact with narcotic drugs most frequently 'results from deliberate experimentation with the drug because of association with persons who are already addicted.'" Proffit, Missouri Narcotic Drug Laws, 17 Mo.L.R. 252, 276. For that reason it is important that addicts be confined or isolated for the protection of society. However, that may be as effectively accomplished under § 202.360, which provides for involuntary civil confinement and treatment in a state hospital, as under a statute defining addiction as a crime and providing for imprisonment upon conviction therefor.

█ Section 1.140, P.P. Vol. 3, V.A.M.S., reads as follows: "The provisions of every statute are severable. If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid, unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent." We agree with the final contention of the Attorney General that no part of § 195.020 should be declared invalid except the portion heretofore expressly ruled to be unconstitutional, i. e., "or to be or become addicted to any narcotic drug." The remainder of the section is not inseparably connected with or

dependent upon the invalid part and it is obvious that the legislature would have enacted "the valid provisions without the void one" because it did so in the 1953 enactment.

The judgment is reversed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.